An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-972-2

Filed 15 July 2026

Alamance County, No. 17CR056552-000

STATE OF NORTH CAROLINA

      v.

JALEN O'KEITH WATLINGTON, Defendant.

Appeal by defendant from judgment entered on or about 27 April 2022 by Judge David T. Lambeth Jr. in Superior Court, Alamance County. Originally heard in the Court of Appeals 8 August 2023 with opinion issued 18 June 2024. On 22 August 2025, the Supreme Court remanded the decision to the Court of Appeals.

> *Attorney General Jeff Jackson, by Assistant Attorney General Donna B. Wojcik and Special Deputy Attorney General Caden William Hayes, for the State.*
>
> *Thomas, Ferguson & Beskind, LLP, by Kellie Mannette and Jay H. Ferguson, for defendant-appellant.*

STROUD, Judge.

In *State v. Watlington*, 294 N.C. App. 503, 903 S.E.2d 404 (2024), *disc. review allowed and remanded*, 388 N.C. 280, 918 S.E.2d 660 (2025), (*Watlington I*) Defendant appealed "his judgment for assault by pointing a gun and discharging a

weapon into an occupied vehicle." *Id.* On 18 June 2024, this Court, bound by *State v. Chambers*, 292 N.C. App. 459, 898 S.E.2d 86 (2024), *rev'd and remanded*, 387 N.C. 521, 915 S.E.2d 96 (2025), granted Defendant a new trial based on the substitution of a juror after deliberations began. *Watlington I*, 294 N.C. App. at 503–04, 903 S.E.2d at 404–05. On 28 June 2024, the North Carolina Supreme Court granted the State's motion for a temporary stay. On 22 August 2025, that Court dissolved the stay and granted the State's petition for discretionary review for the "limited purpose" of remanding the case "for reconsideration in light of" *Chambers*, 387 N.C. at 521. *Watlington I*, 388 N.C. 280, 918 S.E.2d 660.

We have reconsidered Defendant's appeal as directed. *See id.* Based on the Supreme Court's ruling in *Chambers,* we conclude that the juror substitution was not error. 387 N.C. 521, 915 S.E.2d 96. We further conclude that the trial court did not plainly err by not instructing the jury on self-defense.

## I. Background

The background of this case is found in this Court's opinion in *Watlington I,*

> The State's evidence tended to show that on 30 November 2017, Mr. Brandon Miles and Ms. Racshell Carr were driving in a Chevrolet. Defendant was driving a Toyota and backed into the Chevrolet's line of travel, causing Mr. Miles to swerve out of the way to avoid a collision. Immediately after this near collision, at a stop light, Defendant and Defendant's passenger both pulled out guns. Ms. Carr called the police. The occupants of the two cars exchanged words at the next light, and by that time, Ms. Carr was on the phone with the police, and they told her to get Defendant's tag number.

The vehicles then separated, driving onto different streets, but Mr. Miles eventually turned around to get Defendant's tag number. When Mr. Miles found the Toyota, Defendant and his passenger were both waiting at a stop sign with their guns displayed. Shots were fired at Mr. Miles and Ms. Carr, who ducked.

On or about 2 July 2018, Defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI") and discharging a weapon into an occupied vehicle ("firing into a vehicle"). After a seven day trial, the jury found Defendant guilty of assault by pointing a gun. The jury also found Defendant guilty of firing into a vehicle. The trial court entered judgment; Defendant appealed.

294 N.C. App. at 504, 903 S.E.2d at 405 (2024) (quotation marks and brackets omitted).

## II. Juror Substitution

Defendant's first argument on appeal was that "the trial court violated Article I, Section 24 of the North Carolina Constitution when it allowed an alternate juror to substitute for Juror No. 10 on the second day of deliberations." We summarized the facts regarding the substitution in *Watlington I*:

After all evidence had been presented in the case, on 25 April 2022 at about 4:11 pm, the jury was sent to the jury room to select a foreperson and begin deliberations. At about 4:50 pm, the jury sent the trial court a request to see some exhibits, and the jury was brought back to the courtroom. The alternate jurors were also present. Three of the State's exhibits were published to the jury, and they were sent home at 5:00 pm and told to return at 9:30 am the next morning.

On 26 April 2022, Juror No. 10 was missing. The clerk contacted Juror No. 10 and she informed the trial court she had recently injured her foot resulting in

3

swelling, a trip to the emergency room, and doctor's instructions to stay off the foot. The trial court was concerned about the juror's ability to concentrate on the case; the trial court spoke to counsel for the State and Defendant, and neither objected to Juror No. 10 being released and seating the first alternate juror. In deciding to seat the alternate juror, the trial court referred specifically to North Carolina General Statute Section 15A-1215(a), which became effective on 1 October 2021.

In accord with . . . Section 15A-1215(a), the trial court instructed the jury to begin deliberations anew. The trial court further instructed, "This means you should disregard entirely any deliberations taking place before the alternative juror was substituted and consider freshly the evidence as if the previous deliberations had never occurred" and

> although starting over may seem frustrating, please do not let it discourage you. It is important to our system of justice that each juror has a full and fair opportunity to explore his or her views and respond to the views of others so that you may come to a unanimous verdict. All the previous instructions given to you, including the unanimity requirement for a verdict, remain in effect.

The twelve jurors then started deliberations at 10:17 am on 26 April 2022.

*Id.* at 504–05, 903 S.E.2d at 405 (citation, quotation marks, and brackets omitted). Defendant specifically argued that a 2021 amendment to Section 15A-1215 "allowing a juror to be replaced with an alternate even after deliberation has begun, with instructions to begin deliberations anew, [wa]s unconstitutional." *Id.* at 505, 903 S.E.2d at 405.

Having laid out the factual and procedural background and Defendant's original argument on this issue, we turn to our Supreme Court's mandate. *See*

*generally Watlington I,* 388 N.C. at 280, 918 S.E.2d at 660.

In *Chambers*, this Court held that Section 15A-1215(a) was unconstitutional. So although the trial court followed Section 15A-1215(a) in substituting a juror after deliberations had begun, a new trial had to be granted. Our Supreme Court described this Court's opinion in *Chambers* as follows:

> Defendant filed a petition for writ of certiorari with the Court of Appeals, which that court allowed. There [D]efendant contended that the trial court's substitution of an alternate juror during deliberations violated his state constitutional right to a twelve-person jury. The Court of Appeals unanimously agreed. Specifically, it reasoned that Article I, Section 24 of the North Carolina Constitution forbids substitution of alternate jurors after deliberations commence because such substitution results in juries of more than twelve persons determining a defendant's guilt or innocence. Therefore, the Court of Appeals held that by substituting the alternate juror, the verdict was reached by a jury of thirteen people in violation of our state constitution. It further held that [Section] 15A-1215(a), which expressly allows for mid-deliberation juror substitution, conflicted with the state constitution and thus could not support a different outcome. The Court of Appeals therefore vacated [D]efendant's convictions and remanded for a new trial.

387 N.C. at 523, 915 S.E.2d at 98 (2025) (citations, quotation marks, and ellipses omitted).

On 23 May 2025, the Supreme Court reversed this Court's opinion in *Chambers*, holding that Section 15A-1215(a) was not unconstitutional:

> Looking to subsection 15A-1215(a), we conclude that its unconstitutionality has not been shown beyond a reasonable doubt. Indeed, although it contemplates the

substitution of alternative jurors, it provides two critical safeguards that ensure that the twelve-juror threshold remains sacrosanct. Not only does subsection 15A-1215(a) provide that in no event shall more than twelve jurors participate in the jury's deliberations; it also requires trial courts to instruct juries to begin deliberations anew if an alternative juror is substituted after jury deliberations have begun. This requirement preserves the statute's constitutionality. When a jury follows the trial court's instruction and restarts deliberations, as it is presumed to do, there is no longer a risk that the verdict will be rendered by thirteen people. This is because any discussion in which the excused juror participated is disregarded and entirely new deliberations are commenced by the newly-constituted twelve: the original eleven jurors and the substituted alternate. Therefore, the ultimate verdict is rendered by the constitutionally requisite jury of twelve.

The trial court in defendant's case gave the jury exactly the instruction required by statute:

> The law of this state grants the defendant to [sic] a unanimous verdict reached only after full participation of the [twelve] jurors who ultimately return a verdict. This right may only be assured if the jury deliberations begin anew. So, fortunately, this happened after you-all had not gotten far in this because it was late in the day, but I need to tell you that you must restart your deliberations from the beginning. This means that you should disregard entirely any deliberations taken place before the alternate juror was substituted and should consider freshly the evidence as if the previous deliberations had never occurred.

A jury is presumed to follow the instructions given by the trial court. Accordingly, we presume that [D]efendant's jury obeyed the trial court's direction to restart deliberations entirely, disregarding any discussion of the case that took place while Juror #5 was a member of the jury. Therefore, [D]efendant's constitutional right to a

jury of twelve was not violated, and we reverse the decision
of the Court of Appeals.

*Id.* at 526–27, 915 S.E.2d at 100 (citations, quotation marks, brackets, and ellipses omitted).

Here, Defendant does not argue that the trial court failed to comply with Section 15A-1215(a)'s requirements; he argues only that the statute is unconstitutional, and our Supreme Court has rejected that argument. The trial court followed the procedure provided by Section 15A-1215(a) after Juror No. 10 was unable to return on the second day of deliberations. Under *Chambers*, we conclude that the trial court did not err in substituting a juror. *See generally id.* Here, as in *Chambers*, the trial court specifically instructed: the jury "to begin deliberations anew":

> The trial court further instructed, "This means you should disregard entirely any deliberations taking place before the alternative juror was substituted and consider freshly the evidence as if the previous deliberations had never occurred" and
>> [a]lthough starting over may seem frustrating, please do not let it discourage you. It is important to our system of justice that each juror has a full and fair opportunity to explore his or her views and respond to the views of others so you may come to a unanimity verdict. All the previous instructions given to you, including the unanimity requirement for a verdict, remain in effect.

*Watlington I*, 294 N.C. App. at 505, 903 S.E.2d at 405. As in *Chambers*, Defendant's "constitutional right to a jury of twelve was not violated." 387 N.C. at 527, 915 S.E.2d

at 100.  We conclude that the trial court did not err by substituting Juror No. 10.

### III.    Denial of Self-Defense Instruction

In Defendant's original brief to this Court, he raised two other issues on appeal that we did not reach in *Watlington I* because we had granted a new trial on the juror-substitution issue.  We now consider Defendant's other issues.

Defendant contends that the trial court committed plain error by failing to give a self-defense instruction because, "after an argument about a near miss car accident, the prosecuting witness' (sic) car chased [Defendant's] car until it was cornered at a stop sign before the shooting."  Defendant did not request an instruction on self-defense, so we review only for plain error.  *State v. Lawrence*, 365 N.C. 506, 723 S.E.2d 326 (2012).  The State argues that there was no evidence that Defendant reasonably believed "he needed to use deadly force to defend himself from harm."  The State also contends that there was "affirmative evidence" that Defendant "was the aggressor."

"Plain error review in North Carolina is normally limited to instructional and evidentiary error."  *Id.* at 516, 723 S.E.2d at 333 (citations omitted).  Under that standard:

> [A] defendant must demonstrate that a fundamental error occurred at trial.  To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.  Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

8

*Id.* at 518, 723 S.E.2d at 334 (citations, quotation marks, and brackets omitted).

In North Carolina:

> (a) A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force.  However, a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if either of the following applies:
>
>> (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
>
>> . . . .

N.C. Gen. Stat. § 14-51.3 (a)(1) (2021).  Self-defense is unavailable in some cases:

> The justification described in [Sections] 14-51.2 and . . . 14-51.3 is *not available to a person who used defensive force and who*:
>
>> . . . .
>
>> (2) *Initially provokes the use of force against himself or herself*.  However, the person who initially provokes the use of force against himself or herself will be justified in using defensive force if either of the following occur:
>
>>> a.  The force used by the person who was provoked is so serious that *the person using defensive force reasonably believes that he or she was in imminent danger of death or serious bodily harm,* the person using defensive force had no reasonable means to retreat, and the use of force which is likely to cause death or serious bodily harm to the person who was provoked was the only way to

9

escape the danger.

> b. The person who used defensive force *withdraws, in good faith*, from physical contact with the person who was provoked, and indicates clearly that he or she desires to withdraw and terminate the use of force, but the person who was provoked continues or resumes the use of force.

N.C. Gen. Stat. § 14-51.4(2) (2021) (emphasis added).

Here, the State presented evidence that Defendant was not in fear of bodily harm and was the aggressor. *See id.* For example, Mr. Miles testified that Defendant brandished a gun during their first encounter:

> Pretty much we stopped at the light. He asked us pretty much is there a problem and I told him, yes, there is a problem. You almost hit my car. So we exchanged a little bit more words and then he pulled -- both of them their guns out.

Mr. Miles also testified about how he drove as he followed Defendant:

> Q: Okay. And can you describe for the jury how you were driving? You know -- will you describe, you know – or strike that. At any point during the events that you testified to, were you chasing that other vehicle?
>
> A. No.
>
> Q. Did you ever or did those vehicles ever come in contact with each other?
>
> A. Like as in hitting each other?
>
> Q. Yes, sir.
>
> A. No.

10

Q. Did you ever attempt to hit the other vehicle?

A. No.

Q. Did you ever or were you in possession of a firearm?

A. No.

Q. Did you threaten either the defendant or the other occupant of the vehicle?

A. No.

Q. If I can take you back to where you indicated that you had to turn around. Why did you do that?

A. Because when I got to Richmond, I had made a right and then I finally -- he was coming up so I had to turn back around.

Q. And I think you testified that you probably would have let it or just moved on but you were trying to get the tag. Why did you turn around? Why did you keep attempting to catch up or get behind the vehicle again?

A. Because Racshell was on the phone with the police the whole time.

Defendant points to the moment he turned right and the cars separated as the type of withdrawal contemplated by North Carolina General Statute Section 14-51.4. *See* N.C. Gen. Stat. § 14-51.4. He also claims that "a reasonable person could believe it was necessary to shoot at the car to prevent imminent death or great bodily harm." And he notes that "North Carolina law is clear that a car can be considered a deadly weapon," citing *State v. Jones*, 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000). In *Jones*, the "defendant crashed his vehicle into another vehicle occupied by six Wake

11

Forest University students. Two of the students were killed in the collision, while three others were seriously injured." *Id.* at 161, 538 S.E.2d at 921. The evidence showed that the defendant had "repeatedly bumped" another vehicle from behind, used profanity, zoomed around the vehicle, and "shot on off" at an excessive speed, then crossed the center line on a curve and struck the students' car head-on. *Id.* at 161–62, 538 S.E.2d at 921.

The evidence here does not show that Mr. Miles was using his car as a deadly weapon, even if he did try to follow Defendant to get his license plate number after Defendant had displayed a gun. Defendant's argument does not clear the plain error standard's high bar. Merely claiming a jury *could* believe Defendant's arguments does not prove to this Court that this is "the exceptional case [that] . . . seriously affects the fairness, integrity or public reputation of judicial proceedings." *See Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (citations omitted). Defendant has not shown that "the error had a probable impact on the jury's finding that [Defendant] was guilty" and so he has not met the plain error standard. *Id.*

## IV.  Jurisdiction to Convict of Assault by Pointing a Gun

In 2023, in Defendant's initial brief filed for *Watlington I,* the third issue was whether "the trial court erred by instructing the jury on assault by pointing a gun when that is not a lesser included offense of [AWDWIKISI]." (Capitalization altered.) He argued that the trial court lacked jurisdiction to convict him of assault by pointing a gun because "a defendant may not lawfully be convicted of an offense not embraced

within the offense charged in the bill of indictment. *State v. Perry*, 18 N.C. App. 141, 142, 196 S.E.2d 369, 369 (1973)." (Quotation marks and brackets omitted.) Defendant did not object at trial to the jury instructions on assault by pointing a gun, and he did not argue any error in the jury instructions themselves; his only argument was that "the indictment was insufficient to confer jurisdiction." He requested a new sentencing hearing. In its brief, the State conceded error on this issue, because assault by pointing a gun is not a lesser-included offense of AWDWIKISI. We did not address this argument in *Watlington I* because we granted a new trial on another issue. *See* 294 N.C. App. 503, 903 S.E.2d 404.

In May 2024, the Supreme Court issued *State v. Singleton*, holding "that an indictment raises jurisdictional concerns only when it wholly fails to charge a crime against the laws or people of this State." 386 N.C. 183, 184–85, 900 S.E.2d 802, 805 (2024) (footnote omitted). After this case was remanded, in August 2025, the State filed a "Motion to Partially Reopen Docket for Briefing," requesting under "Rule 37(a) of the North Carolina Rules of Appellate Procedure, that this Court reopen briefing" "to give Defendant the opportunity to show prejudice, pursuant to . . . *Singleton*, . . . related to Issue III of Defendant's Opening Brief." (Emphasis added.) Defendant did not object to the motion, and this Court issued an order allowing the State's motion for supplemental briefing, directing the parties to address "the application of the opinion of the Supreme Court of North Carolina in . . . *Singleton*, . . . on Issue III" of Defendant's opening brief.

In his supplemental brief, Defendant acknowledges that under *Singleton*, "the State properly indicted a crime: [AWDWIKISI]." He notes that this "crime has several . . . proper lesser included offenses," but even the State agrees that "assault by pointing a gun is <u>not</u> one of them." (Emphasis in original.) Defendant thus implicitly concedes that under *Singleton* his jurisdictional argument based on the indictment fails. He argues instead that, although *Singleton* made "pleading deficiencies non-jurisdictional," he may still be entitled to relief for an indictment error if he demonstrates prejudice. Specifically, he claims that because he was not indicted for assault by pointing a gun, the trial court should not have instructed the jury on that offense, and that the instruction prejudiced him because the jury convicted him on the charge. Ultimately, Defendant contends that *Singleton* changes "some of the structure around this issue" but "does not change the outcome" he sought on appeal. He still requests a new sentencing hearing because this charge "was consolidated for judgment with the discharging a weapon into an occupied vehicle in operation."

The State agrees that under *Singleton*, Defendant's jurisdictional argument based on the indictment is without merit. The State asserts that in his supplemental briefing, Defendant's "argument focuses on the alleged prejudice from *an instruction*, breaking from the indictment claim Defendant originally raised. . . . Defendant may not now transform that indictment claim into a jury instruction claim." The State further notes that to the extent Defendant now seeks to raise a new challenge to the

jury instructions, he failed to preserve it: he did not object to the instructions at trial, nor has he argued plain error on appeal. *See generally State v. Leopard*, 300 N.C. App. 199, 205, 920 S.E.2d 390, 394 (2025) ("In the absence of an objection at trial, jury instructions may be challenged on appeal only for plain error, and the defendant must specifically and distinctly argue plain error on appeal." (citation and quotation marks omitted)).

*Singleton* dealt with the effect of an indictment defect on subject matter jurisdiction—the issue Defendant presented in his initial brief. Our Supreme Court issued Singleton during the pendency of this appeal. After remand, this Court allowed the parties to address *Singleton*'s effect on issue three as stated in Defendant's opening brief, but we did not open the door for Defendant to switch to an entirely different argument. *Singleton* changed more than "some of the structure around" Defendant's third issue; it changed the result, because the trial court had jurisdiction to convict him of assault by pointing a gun. Defendant's attempt to recast the same issue as an instructional error fails, particularly because the jury was instructed on assault by pointing a gun without objection at trial.

## V.    Conclusion

The trial court did not err by substituting Juror No. 10, did not plainly err in its instructions on self-defense, and had jurisdiction to convict Defendant of assault by pointing a gun.

NO PLAIN ERROR; NO ERROR.

15

Judges ARROWOOD and GRIFFIN concur.

Report per Rule 30(e).